**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MUSTAFA ALI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-665 |
| | ) | |
| v. | ) | Magistrate Judge Lenihan |
| | ) | |
| JOSEPH H. DUPONT, et al., | ) | |
| | ) | ECF Nos. 37, 42, 49 |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Presently before the Court in this § 1983 civil rights action are Motions to Dismiss filed by the following Defendants: Dr. Cairns, Joseph H. Dupont, Jamie Ferdarko, Renee Foulds, I Gustafson, Anthony Miorelli, Keri Moore, Derrick Oberlander, Michael Overmyer, Gary Prinkey, J. Sawtelle, Cheryl Scott, Joseph Silva, Dr. Bruce Simons, Kim Smith, Tracey Smith, Trevor Wingard (ECF No. 37); Dawn Ducote, Dr. Eisenberg, Richard Ellers, Lisa Lamoreaux, Heather McKeel (ECF No. 42); and Dr. Hasper (ECF No. 49).

For the reasons discussed below the Motions will be disposed of as follows: The Motion to Dismiss filed by Dr. Hasper (ECF No. 49) will be granted in part and denied in part. The Motion will be granted as it relates to Plaintiff's claim for delay/denial of medical care, and denied as it relates to Plaintiff's claim for retaliation.

The Motion to Dismiss filed by Dawn Ducote, Dr. Eisenberg, Richard Ellers, Lisa Lamoreaux, Heather McKeel (ECF No. 42) will be granted.

The Motion to Dismiss filed by Dr. Cairns, Joseph H. Dupont, Jamie Ferdarko, Renee Foulds, I Gustafson, Anthony Miorelli, Keri Moore, Derrick Oberlander, Michael Overmyer, Gary Prinkey, J. Sawtelle, Cheryl Scott, Joseph Silva, Dr. Bruce Simons, Kim Smith, Tracey

Smith, Trevor Wingard (ECF No. 37) will be granted in part and denied in part. It will be granted as to the following claims: All official capacity claims and claims for declaratory and injunctive relief; claims against Defendants Silva, Cairns, I. Gustafson, K. Smith, Fedarko, Prinkey and Dr. Simons, Overmyer, Moore; Foulds, Miorelli and Scott for lack of personal involvement relating to the grievance process; claims against T. Smith and Wingard relating to Plaintiff's religious diet accommodation claim; and the retaliation claim as it relates to the delay/denial of medical care against Defendants Prinkey, K. Smith, Ferdarko, Overmyer and Moore. It will be denied as to the following claims: The claim against Overmyer and Dupont with respect to their involvement in reviewing Plaintiff's appeals from an administrative custody placement; the cell illumination claim, the due process claim relating to Plaintiff's confinement in administrative custody; and the retaliation claims relating to the removal of Plaintiff's Z-code status and confinement in administrative custody.

Plaintiff, Mustafa Ali ("Plaintiff") is currently in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Retreat ("SCI-Retreat"). In summary[1], the Complaint names several DOC officials and employees assigned to his place of prior confinement, the State Correctional Institution at Forest ("SCI-Forest"). Plaintiff also names DOC-contracted medical providers and alleges that he suffered from foot pain and was not provided with appropriate medical care. Plaintiff also raises issues with respect to the handling of inmate grievances and other written complaints. In addition, Plaintiff asserts claims of illegal confinement concerning his placement in the Restrict Housing Unit ("RHU"); denial of religious diet accommodation; Z-Code relating to the removal of his single cell status;

---

[1] Because the named Defendants and allegations are numerous, the Court will discuss specific allegations of the Complaint where relevant to each analysis concerning specific Defendants.

cell illumination and noise; retaliation in the form of falsified misconducts; and retaliation for filing a PREA [Prison Rape Elimination Act] complaint against a staff member.

Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive damages.

## II.     LEGAL STANDARDS

### 12(b)(6) Legal Standard

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

### Pro Se Legal Standard

When considering pro se pleadings, a court must employ less stringent standards than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law,

irrespective of whether the pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

III.     ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

A.     MOTION TO DISMISS FILED BY DR. HASPER

Plaintiff's allegations relating to his Eighth Amendment claim are limited. He identifies Dr. Hasper as a psychiatrist at SCI-Forest. (Complaint, ECF No. 3 at ¶ 9.) He alleges that on April 17, 2017, he covered his body in feces to "camouflage himself from the demons" which resulted in him being "again staffed for a Z-code." (ECF No. 3 at ¶ 100.) Plaintiff alleges that on this date he was seen by a nurse who contacted a physician and advised Plaintiff that he would be seen by Dr. Hasper the next morning. (*Id.*) Plaintiff alleges that "Dr. Hasper didn't call for Plaintiff until after 1:00 p.m., some 10 hours later." (*Id.*)

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the States through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)).

In the context of medical treatment, an inmate must prove two elements: (1) that he was suffering from a "serious medical need," and (2) that prison officials were deliberately indifferent to the serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzara*, 834 F.2d 326, 347 (3d Cir. 1987). Dr. Hasper does not appear to dispute that Plaintiff's medical needs were serious. (Brief in Support of Motion to Dismiss, ECF No. 50 at 7.)

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has acknowledged that "'if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out.'" *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *Ancata v. Prison Health Serv., Inc.,* 769 F.2d 700, 704 (11th Cir. 1985), and citing *Archer v. Dutcher,* 733 F.2d 14 (2d Cir. 1984) ("allegation that emergency medical care to pregnant inmate was delayed in order to make her suffer states a claim of deliberate indifference under *Estelle*")). *See Brooks v. Kyler*, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (quoting *Lanzaro,* 834 F.2d at 346) (delay of medical care will state an Eighth Amendment claim where the temporary denial exposes inmate "to undue suffering or the threat of tangible residual injury.").

A prisoner must demonstrate that the official acted with more than mere negligence. *Estelle*, 419 U.S. at 105. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837. It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990). Moreover, "[a] court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Here, liberally construing Plaintiff's Complaint and affording him every favorable inference from the facts alleged, Plaintiff is unable to state a claim for deliberate indifference to medical needs. In his responsive brief, Plaintiff directs the Court to the fact that Dr. Hasper is a ranking member of the Psyshological Review Team. (ECF No. 71 at 6.) His complaints focus on Dr. Hasper's alleged involvement with Plaintiff's Z-Code status rather than his alleged delay in treating Plaintiff's mental health issues. Plaintiff does not allege or suggest that he was somehow injured or made to suffer as a result of the alleged delay in seeing Dr. Hasper. He was seen by a nurse and subsequently by Dr. Hasper. Instead, Plaintiff's allegations suggest that Plaintiff disagrees with the conclusions of Dr. Hasper as they related to the ultimate determination as to his Z-Code status. Disagreement with a physician's conclusions does not establish an Eighth Amendment violation. *White*, 897 F.2d at 110.

Therefore, Dr. Hasper's Motion to Dismiss Plaintiff's Eighth Amendment claim for delay of medical treatment will be granted. Any attempt to amend would be futile.[2]

Plaintiff's Responsive Brief also suggests that he is making a claim for retaliation relating to the denial of his Z-Code status. He states that Dr. Hasper's actions in "sabotaging" Plaintiff's efforts for placement in the Special Assessment Unit and Special Management Unit "were in retaliation for filing numerous complaints against [him] with the Bureau of Professional and Occupational Affairs" as related to Dr. Hasper's professional license. (Plaintiff's Responsive Brief, ECF No. 71 at 6.) Plaintiff alleges no facts in his Complaint to state a retaliation claim

---

[2] This Court recognizes that the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint—regardless of whether the plaintiff requests to do so—when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). Given this Court's above analysis, it would be futile to allow Plaintiff to amend his Complaint on the Eighth Amendment claim.

against Dr. Hasper, and as a consequence, Dr. Hasper does not move to dismiss on this issue. In light of Plaintiff's pro se status, the Court will consider a claim for retaliation against Dr. Hasper.

In order to state a claim for retaliation, Plaintiff must aver the following: 1) the conduct leading to the alleged retaliation was constitutionally protected; 2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and 3) that his protected conduct was a substantial or motivating factor in the decision to discipline him. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Here, assuming that filing a complaint with the Bureau of Professional and Occupational Affairs as related to Dr. Hasper's professional license is a constitutionally protected activity, Plaintiff has alleged a prima facie case of retaliation.

Because the Court is mandated by the United States Court of Appeals for the Third Circuit to construe pro se pleadings liberally, the Court will allow this claim for retaliation to move forward. Plaintiff's Eighth Amendment claim for delay/denial of medical care against Dr. Hasper will be dismissed with prejudice. Plaintiff's claim against Dr. Hasper for retaliation remains pending.

B.      MOTION TO DISMISS FILED BY DAWN DUCOTE, DR. EISENBERG, RICHARD ELLERS, LISA LAMOREAUX, HEATHER MCKEEL (ECF NO. 42)

Plaintiff's claims against these Defendants involve the alleged delay and/or denial of appropriate medical care regarding Plaintiff's foot pain while he was incarcerated at SCI-Forest. Plaintiff also attempts to allege a retaliation claim against certain of these Defendants.

Plaintiff alleges that on January 22, 2016 he was seen via video conference ("telemed") by an orthopedic surgeon who ordered orthotics for him and that Defendant Dr. Eisenberg, medical director, was present. (ECF No. 3 ¶ 27.) Thereafter, on February 15th, Plaintiff was

escorted to an orthotics appointment but the unidentified individual who "did the orthotics did not show." (ECF No. 3 ¶ 28.) On March 4th, Plaintiff was escorted to another telemed appointment with a different orthopedic surgeon. When asked if the orthotics were helping him, Plaintiff responded that he never received them. The doctor re-ordered the orthotics, ordered an MRI and a follow-up visit to discuss the MRI and any further treatment. (ECF No. 3 ¶ 29.) The doctor informed Plaintiff that if orthotics failed, surgery was the next option. Plaintiff alleges that Defendant Nurse McKeel was present for this conversation. (ECF No. 3 ¶ 30.) Plaintiff wrote to Defendant Dr. Eisenberg asking about the status of the MRI and orthotics appointment, but was taken to Kane Hospital for the MRI before he received the reply on March 17, 2016. (ECF No. 3 ¶ 31.) Defendant Lamoreaux answered Plaintiff's request to Defendant Dr. Eisenberg on March 22, 2017 that his orthotic appointment had been rescheduled. (ECF No. 3 at ¶ 32.) On March 30, 2016, Plaintiff wrote to Defendant Lamoreaux asking if there was a telemed scheduled to discuss the MRI results. (ECF No. 3 at ¶ 33.) Then on April 1, 2016, an officer informed Plaintiff that he had a dental appointment. Plaintiff told the officer that he did not want to go to the dental appointment, because he was just seen by dental in February. (ECF No. 3 at ¶ 34.) Later, Plaintiff learned that the April 1st appointment was an orthotics appointment, rather than a dentist appointment. Despite numerous scheduling issues, Plaintiff received his orthotics and orthopedic shoes in June of 2016. (ECF No. 3 ¶¶ 35-43.)

## DEFENDANT DR. EISENBERG

Defendant Eisenberg argues that Plaintiff's Eighth Amendment claims must be dismissed because Plaintiff's averments, taken as true, cannot establish that he acted with deliberate indifference. Plaintiff claims that Dr. Eisenberg was responsible for a delay in rescheduling his orthotics appointment, but also alleges that his decision was based on Eisenberg's belief that

Plaintiff had previously refused to attend the appointment. This confusion regarding scheduling cannot evidence deliberate indifference. In *Farmer*, the United States Supreme Court clarified its meaning of the term "deliberate indifference" and held as follows:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

511 U.S. at 837-38. Clearly, the allegations against Dr. Eisenberg do not establish the requisite state of mind requirement. In addition, Plaintiff alleges that the appointment was rescheduled and that by June 2016, he had received his orthotics and orthopedic shoes. (ECF No. 3 ¶ 43.) Therefore, Defendant Dr. Eisenberg's Motion to Dismiss Plaintiff's Eighth Amendment claim will be granted. Any attempt to amend would be futile.

## DEFENDANT NURSE MCKEEL

Plaintiff's allegation of deliberate indifference relating to Nurse McKeel relates to a sick call visit. Plaintiff alleges that on the March 16, 2017 sick call visit, McKeel denied his request to see Dr. Maxa and ended her examination abruptly. His grievance related to this visit adds further information concerning their exchange. In his Grievance No. 669015, Plaintiff indicates that McKeel offered Plaintiff pain medication that he declined, and that she discussed stretching exercises provided to Plaintiff by a physical therapist to address Plaintiff's pain. McKeel also discussed the use of his orthopedic shoes, and the use of cool compresses. (ECF No. 3 ¶ 48.) She noted that Plaintiff was argumentative throughout the visit and used verbal threats repeatedly.

She asked Plaintiff to stop and when he refused, he continued with his threats and the visit was terminated. (ECF No. 3 ¶ 48) (ECF No. 50-4 at 25-26.)

McKeel's Motion to Dismiss Plaintiff's Eighth Amendment claim must be granted as he is unable to establish that she acted with deliberate indifference. Plaintiff's desire to be treated by Dr. Maxa, rather than McKeel, a Certified Registered Nurse Practitioner, does not support a claim for deliberate indifference to medical needs. The law is clear that a prisoner does not have an Eighth Amendment right to be treated by the medical provider of his choice, and "the fact that [P]laintiff does not have the right to dictate which medical provider renders his care does not amount to deliberate indifference on the part of [Defendant]." *Brown v. Prison Health Servs.,* Civil Action No. 12-3578, 2013 WL 6139646, at *7 (E.D. Pa. Nov. 20, 2013). Therefore, Plaintiff's Eighth Amendment claim against Defendant McKeel for deliberate indifference to medical needs will be dismissed with prejudice. Any attempt to amend would be futile.

At paragraph 63 of the Complaint, Plaintiff attempts to allege a claim of retaliation against various individuals, including Nurse McKeel. Plaintiff alleges that the actions of McKeel and others "in denying Plaintiff medical is in retaliation for filing grievances against them and naming them in a previous lawsuit." (ECF No. 3 ¶ 63.) As to Nurse McKeel, Plaintiff's claim for retaliation must be dismissed with prejudice. Plaintiff cannot allege that he suffered an adverse action at the hands of McKeel where he is unable to state a plausible claim for relief that she was deliberately indifferent to his serious medical needs.

## DEFENDANT LISA LAMOREAUX

In support of her Motion to Dismiss, Defendant Lamoreaux argues that Plaintiff has failed to allege a violation of the Eighth Amendment because as a Health Services Administrator, she is not responsible for ordering the treatment sought by Plaintiff. Plaintiff alleges only that

she was aware of the scheduling difficulties for his orthotic appointment. In his responsive brief, Plaintiff adds that she intentionally denied and delayed his access to medical treatment. (ECF No. 71 at 8.)

Here, Lamoreaux's Motion to Dismiss must be granted. Although she was aware of Plaintiff's scheduling difficulties and miscommunications regarding his orthotic appointments, she cannot be considered deliberately indifferent because she failed to respond directly to the medical complaints of a prisoner who was already being treated by a prison doctor. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). As a Health Services Administrator, a non-medical prison official, Lamoreaux is not responsible for ordering the treatment sought by Plaintiff. *See Camp v. Overton,* Civil Action No. 10-281 Erie, 2011 WL 5188038, at *4 (W.D. Pa. Oct. 11, 2011). Plaintiff alleges no facts to suggest that Lamoreaux had knowledge of any malicious or sadistic medical treatment, and therefore, she cannot be held liable pursuant to the Eighth Amendment. *See id.* Plaintiff's Eighth Amendment claim against Defendant Lamoreaux will be dismissed with prejudice. Any attempt to amend this claim would be futile.

Finally, in Plaintiff's responsive brief, he states that McKeel and Lamoreaux, along with various DOC Defendants "conspired to deny [P]laintiff medical care." (ECF No. 71 at 10.) He describes their conduct as "concerted efforts to place obstacles in his way of receiving medical care related to his foot pain and other medical conditions, continually making false statements in regard to that care . . . ." (*Id.*) Plaintiff's attempt to allege a conspiracy involving McKeel and Lamoreaux must fail because Plaintiff is unable to state a plausible claim for denial/delay of medical care pursuant to the Eighth Amendment. *See White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010) (§ 1983 conspiracy cannot be established where plaintiff cannot state an underlying violation of constitutional rights). Again, any attempt to amend would be futile.

## DEFENDANTS RICHARD ELLERS AND DAWN DUCOTE

These Defendants argue that Plaintiff has failed to allege their personal involvement, instead relying on respondeat superior liability.  Plaintiff responds only that he brings these claims pursuant to a municipal liability theory.  Defendants Ellers is described in the Complaint as the Vice President of Correct Care Solutions, LLC, the private company contracted to provide medical care providers to the state correctional institutions within the Commonwealth of Pennsylvania.  (ECF No. 3 ¶ 24.)  Defendant Ducote is identified as the human resources contact for Correct Care Solutions.  (ECF No. 3 ¶¶ 23, 65.)  Plaintiff alleges only that he wrote to both, apprising them of the conduct of five of their employees at SCI-Forest but nothing was done to correct all of the employees' violations.  Plaintiff continues that "[t]his is because their actions are in line with CCS policy."  (ECF No 3 ¶ 65.)  Plaintiff is attempting to establish respondeat superior liability against these Defendants, which fails to state a claim as a matter of law pursuant to § 1983 jurisprudence.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Moreover, Plaintiff's attempts to invoke *Monell* liability must fail because he is unable to state a claim for deliberate indifference to medical needs as to the individual Defendants.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (no claim for municipal liability where there is no underlying constitutional violation by individuals).  Therefore, the Motion to Dismiss as it pertains to Defendants Ellers and Ducote will be granted.  Any attempt to amend would be futile.

## CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff's requests for injunctive and declaratory relief against these Defendants were rendered moot by his transfer to SCI-Retreat especially in the absence of any indication that he

will once again be confined at SCI- Forest. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003). These claims for relief will be dismissed with prejudice.


C. MOTION TO DISMISS FILED BY DR. CAIRNS, JOSEPH H. DUPONT, JAMIE FERDARKO, RENEE FOULDS, I GUSTAFSON, ANTHONY MIORELLI, KERI MOORE, DERRICK OBERLANDER, MICHAEL OVERMYER, GARY PRINKEY, J. SAWTELLE, CHERYL SCOTT, JOSEPH SILVA, DR. BRUCE SIMONS, KIM SMITH, TRACEY SMITH, TREVOR WINGARD (collectively "Corrections Defendants") (ECF NO. 37)

1. Official Capacity Claims and Claims for Injunctive Relief

The Corrections Defendants move to dismiss all claims asserted against them in their respective official capacities and for injunctive relief. Plaintiff does not respond to this argument.

The Eleventh Amendment bars civil rights suits against a State in federal court by private parties where the State has not consented to such action. *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). The Supreme Court of the United States has consistently held that an un-consenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Employees v. Dep't of Pub. Health and Welfare*, 411 U.S. 279, 280 (1973). This immunity applies regardless of the relief sought by a party. *Id*.; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding Eleventh Amendment immunity applies "regardless of the relief sought."). The Commonwealth of Pennsylvania, by way of statutory authority, has expressly withheld consent to suit in federal court. 42 Pa. Cons. Stat. Ann. § 8521(b); *Laskaris*, 661 F.2d at 25. Pennsylvania's Eleventh Amendment immunity extends to suits against "arms of the state," i.e., departments or agencies of the State having no existence separate from the State. *Laskaris*, 661 F.2d at 25 (citing *Mt. Healthy Bd. of Educ. v.*

*Doyle*, 429 U.S. 274, 280 (1977)).  Moreover, the United States Supreme Court has determined that Congress did not intend for § 1983 to overcome the sovereign immunity of States as embodied in the Eleventh Amendment.  *Will,* 491 U.S. at 66-67.  Therefore, States, as well as entities of the State, are not "persons" who can be subject to liability under § 1983.

In this case, Plaintiff's claims against the Corrections Defendants in their official capacities are barred by the Eleventh Amendment.  Plaintiff's official capacity claims against the individual Defendants are essentially claims against the DOC.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (Suits against government employees in their official capacities "generally represent another way of pleading an action against an entity of which an officer is an agent.").  The DOC is an arm of the Commonwealth of Pennsylvania.  *Johnson v. Wenerowicz*, 440 F. App'x 60, 62 (3d Cir. 2011) ("Because the Pennsylvania DOC is a part of the executive department of the Commonwealth of Pennsylvania, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) (other citations omitted). *Johnson*, 440 F. App'x at 62 (citing *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003)).

Likewise, Plaintiff's requests for injunctive and declaratory relief against the named DOC Defendants were rendered moot by his transfer to SCI-Retreat especially in the absence of any indication that he will once again be confined at SCI-Forest. *See Sutton*, 323 F.3d at 248.

Therefore, the Corrections Defendants' Motion to Dismiss the official capacity claims and claims for injunctive relief will be granted.

2. Time-Barred claims

The Corrections Defendants move to dismiss certain claims that occurred more than two years from the filing of the Complaint.  Defendants do not consider, however, that the statute of

limitations is tolled until Plaintiff exhausts his administrative remedies. *Pearson v. Sec'y Dep't of Corrs.*, 775 F.3d 598, 603 (3d Cir. 2015.) Relatedly, the DOC Defendants advance no arguments as to whether Plaintiff has exhausted his administrative remedies.[3] Consequently, the Court will not consider this argument by the DOC Defendants.

### 3. Personal Involvement Relating to Inmate Grievance Process and Responding to Plaintiff's written Complaints after the fact.

Defendants move to dismiss Plaintiff's claims relating to his dissatisfaction with the grievance process and certain Defendants' actions after he filed various grievances.

To establish liability against a defendant in a § 1983 action, defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. However, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement necessary to state a claim. *See Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to later-filed grievances about his medical treatment, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). *See also Mearin v. Swartz*, 951 F. Supp.2d 776, 782 (W.D. Pa. 2013) ("merely participating in the grievance process is insufficient to confer

---

[3] Plaintiff's submissions suggest repeatedly that his administrative remedies were unavailable to him.

16

knowledge of, and acquiescence to, a constitutional violation"); *Wilkerson v. Schafer*, Civil No. 4:09-CV-2539, 2011 WL 900994, at *7 (M.D. Pa. Mar. 14, 2011) ("participation in after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing grievances"); *Croom v. Wagner*, Civil Action No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that "neither the filing of a grievance nor an appeal of a grievance . . . is sufficient to impose knowledge of any wrongdoing"); *Ramos v. Pa. Dept. of Corr.*, Civil No. 4:CV-06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

The Court now turns to the allegations relating to specific DOC Defendants.

DEFENDANTS SILVA, CAIRNS AND GUSTAFSON

The Corrections Defendants argue that Plaintiff fails to provide any allegations associated with these Defendants and that they are only identified by name and title. (Brief in Support of Motion to Dismiss, ECF No. 38 at 11 (citing Complaint ¶¶ 8, 25, & 26)). In his Responsive Brief, Plaintiff only includes Defendant Cairns' name in a heading but adds nothing further. (ECF No. 71 at 6.) As to Defendant Silva, Plaintiff's response refers to Silva's involvement in the grievance process and correspondence concerning his medical treatment, and that he failed to act concerning Plaintiff's grievances. (ECF No. 71 at 13.) As to Defendant Gustafson, Plaintiff includes his name in a heading but adds no substantive information. (ECF No. 71 at 14.) Thereafter, Plaintiff states that Community Corrections Program Manager "Gustafson along with Dr. Simons & Dr. Hasper sabotaged Plaintiff's referral packet to the Special Assessment Unit ("SMU") in order that it could be rejected and then they all fabricated information in his SMU referral package in order that he would be admitted." (ECF No. 71 at 17.) It appears that

Plaintiff is arguing that he disagrees with their professional recommendations in the grievance process as his argument continues that these recommendations were appealed to the Superintendent. (*Id.*)

Therefore, in light of the caselaw set out above, the claims against Silva and Cairns will be dismissed as these claims relate at most, to the grievance process. The claims against Gustafson, as they claims relate to the grievance process, will also be dismissed.

<u>DEFENDANTS KIM SMITH, FEDARKO, PRINKEY AND DR. SIMONS</u>

The Corrections Defendants argue that Plaintiff's claims against these Defendants arise from their initial responses to Plaintiff's grievances concerning his medical care and treatment, and as to Dr. Simons—the removal of his single-cell status. (ECF No. 38 at 11 (citing Complaint ¶¶ 42, 44-45, 57-61, 97)). Again, to the extent that Plaintiff's claims against these Defendants are based on their participation in the responses given to Plaintiff's grievances, the claims will be dismissed.[4]

In his responsive brief, Plaintiff argues that along with answering his numerous grievances regarding his complaints as to medical care, Defendants Ferdarko, Prinkey and others denied him adequate medical care. (ECF No. 71 at 8.) Specifically, he states that "[t]hese defendants denied plaintiff's reasonable requests for further treatment and these denials resulted in undue suffering and residual injury." (ECF No. 71 at 9.) Plaintiff does not set out the nature of the residual injury, but does indicate that he was prescribed a steroid and a nurse was instructed by Dr. Eisenberg as to how to administer cortisone injections for Plaintiff's heel and foot pain. (ECF No. 71 at 9.) The law is clear that deliberate indifference is generally not found when some level of medical care has been given, and attempts to second guess the propriety or adequacy of particular treatments is avoided by the courts and left to the judgment of medical

---

[4] To the extent that Plaintiff's claims relate to retaliation, those are discussed *infra* at III.C.5.

professionals. *See Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979); *United States ex rel Walker v. Fayette Cnty.*, 599 F.2d 533, 575 n.2 (3d Cir. 1979); *see also Clark v. Doe*, No. CIV. A. 99-5616, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Accepting Plaintiff's allegations as true, there is nothing in his Complaint to indicate that Defendants' action or omissions rose to the level of deliberate indifference. Plaintiff's Complaint against these Defendants relating to denial of adequate medical care will be dismissed.

Finally, at paragraph 63 of the Complaint, Plaintiff attempts to allege a claim of retaliation against Smith, Fedarko and Prinkey. Plaintiff alleges that the actions of these Defendants and others "in denying Plaintiff medical is in retaliation for filing grievances against them and naming them in a previous lawsuit." (ECF No. 3 ¶ 63.) Plaintiff's claim for retaliation against K. Smith, Fedarko and Prinkey must be dismissed with prejudice because Plaintiff cannot establish that he suffered an adverse action at the hands of these Defendants. That is, Plaintiff is unable to state a plausible claim that Defendants were deliberately indifferent to his serious medical needs. Therefore, Plaintiff's claim for retaliation against K. Smith, Fedarko and Prinkey will be dismissed with prejudice.

## DEFENDANTS OVERMYER AND MOORE

As to Defendants Overmyer and Moore, Plaintiff allegations concern their roles as Facility Manager and Assistant Chief Grievance Officer in receiving and reviewing Plaintiff's various grievance appeals. (ECF No. 3 ¶¶ 46, 48, 51, 61-63.) In his response, Plaintiff again complains about the actions of these Defendants relating to the grievance process. (ECF No. 71 at 2-5.)

As discussed at length above, Plaintiff's claims concerning their involvement in the grievance process must be dismissed.

Plaintiff also alleges that the actions of Overmyer and Moore, along with others, in denying Plaintiff adequate medical care was in retaliation for filing grievances against them and naming them in a previous lawsuit. (ECF No. 3 ¶ 63.) Likewise, this claim must fail because Plaintiff cannot establish that he suffered an adverse action at the hands of these Defendants. That is, Plaintiff is unable to state a plausible claim that Defendants were deliberately indifferent to his serious medical needs. Any attempt to amend would be futile.

## DEFENDANTS OVERMYER AND DUPONT

The Corrections Defendants also move to dismiss the claims against Defendant Overmyer and Dupont with respect to their involvement in reviewing Plaintiff's appeals from an Administrative Custody placement. (ECF No. 3 ¶¶ 71, 75-76.) Plaintiff alleges that at the time of their involvement, the alleged due process violations were ongoing. (ECF No. 3 ¶¶ 71, 75-76.) Therefore, the claims against Overmyer and Dupont relating to their review of Plaintiff's appeals from Administrative Custody placement may not be dismissed at this time. *See, e.g., Whitehead v. Rozum,* No. 3:11-102, 2012 WL 4378193, at *2 (W.D. Pa. Aug. 7, 2012) ("In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (citations omitted). Therefore, these claims remain against Defendants Overmyer and Dupont.

## DEFENDANTS FOULDS, MIORELLI AND SCOTT

Plaintiff alleges that Defendants Foulds, Miorelli and Scott were the individuals who responded to his correspondence that he actually directed it to the highest-level DOC officials.

(ECF No. 3 ¶ 96.) Plaintiff states that they informed SCI-Forest staff that Plaintiff was complaining to these high-level officials, thereby subjecting Plaintiff to retaliation by SCI-Forest staff. (Id.) These Defendants argue that Plaintiff's claim must be dismissed because merely responded to inmate correspondence is insufficient to establish personal involvement. The Court also notes that Plaintiff does not allege that these Defendants retaliated against Plaintiff.

The Motion to Dismiss filed on behalf of Foulds, Miorelli and Scott must be granted. First, merely handling the correspondence on behalf of high-level DOC officials does not establish personal involvement of these Defendants for purposes of § 1983 liability. *See Rivera v. Tennis,* No. 09-0888, 2010 WL 2838603, at *7 (M.D. Pa. May 20, 2010), *report and recommendation adopted,* 2010 WL 2838605 (M.D. Pa. July 19, 2010). Second, Plaintiff does not allege that these Defendants retaliated against him, only that they relayed information that would have been better kept confidential. Defendants Foulds, Miorelli and Scott must be dismissed for lack of personal involvement. Any attempt to amend would be futile.

4. Religious Diet Accommodation (Defendants T. Smith and Wingard)

The Corrections Defendants argue that Plaintiff's claim pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA") regarding denial of religious accommodation for a Halal Diet must be dismissed because the DOC offers three religious diet accommodations and all offer alternatives to the DOC's main food line. (ECF No. 38 at 14-16.) In addition, Defendants argue that because RLUIPA only provides for declaratory or injunctive relief, the claim must also be dismissed following Plaintiff's transfer from SCI-Forest to SCI-Retreat.

Plaintiff responds that his rights are being violated and that he did not request Halal meat so as not to burden the institution with a higher cost. (ECF No. 71 at 18-22.) Plaintiff also states

that "[a]t the time of plain[t]iff's request for religious diet accommodation, the DOC offered Kosher and no-animal product meals." (ECF No. 71 at 19.)

The United States Court of Appeals has held that providing only vegetarian meals to accommodate Halal-observant inmates is constitutionally acceptable. *See Riley v. DeCarlo,* 532 F. App'x 23, 27-28 (3d Cir. 2013); *Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011); *Williams v. Morton*, 343 F.3d 212, 217-21 (3d Cir. 2003).[5] Therefore, DOC Defendants' Motion to Dismiss Plaintiff's claim for a religious diet accommodation will be granted. Any attempt to amend would be futile as a matter of law.

5. Retaliation

Defendants move to dismiss Plaintiff's many retaliation claims arguing that his allegations are vague and do not meet the requirements of *Twombly*. A review of the Complaint reveals that Plaintiff has stated some plausible claims for retaliation. Plaintiff alleges the following: 1) In paragraphs 78-79 of the Complaint, Plaintiff alleges that because of alleged violations of his procedural due process rights, he has been confined in administrative custody and the "Special Management Unit" in retaliation for filing numerous grievances concerning his due process rights and for filing a previous civil lawsuit against SCI-Forest administration and medical staff; 2) In paragraphs 90-91, Plaintiff alleges that his Z-Code status was removed, a false misconduct filed, and that he was placed in the Restricted Housing Unit on the same day in retaliation for filing grievances against staff and for filing civil lawsuits against administrative and medical staff.[6]

---

[5] In a grievance, Plaintiff requested that the institution supply pre-packaged Halal meals in the commissary. In response, it was noted that "the inmate may suggest to the institution's IGWF Committee that commissary consider selling pre-packaged and shelf-stable ready-to-eat halal meals." (ECF No. 43-1 at 125.)

[6] As discussed at III. B. & C., *supra,* Plaintiff's claims for retaliation relating to the alleged delay/denial of medical care will be dismissed.

The filing of prison grievances and civil lawsuits are activities protected by the First Amendment. *See Allah v. Al-Hafeez*, 208 F. Supp.2d 520, 535 (E.D. Pa. 2002) ("both filing a lawsuit and filing grievances are protected activities") (citing *Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1997), and *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). The fact that an adverse action occurs after a civil complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). The record reflects numerous grievances and one state civil action filed in the Court of Common Pleas of Forest County at Civil Action No. 97 of 2015. Plaintiff alleges that after he filed his civil action, he began receiving false misconducts, placed in the Restricted Housing Unit, received more false misconducts while in the Restricted Housing Unit, eventually placed on Administrative Custody Status and then processed for the Special Management Unit. Accepting all of Plaintiff's allegations as true and affording him all favorable inferences, Plaintiff has alleged plausible claims for retaliation. Resolution of these claims is better left for summary judgment. The DOC's Motion to Dismiss these retaliation claims will be denied.

6. Twenty-four (24) Hour Illumination and Noise

Plaintiff attempts to state a claim with regard to injuries he has sustained because of 24-hour cell illumination and noise. The United States Court of Appeals for the Third Circuit has noted that "[i]n some instances where continuous lighting causes inmates to suffer physical and psychological harm, courts have held that living in constant illumination is without penological justification." *Huertas v. Sec'y Pa. Dep't of Corrs.*, 533 F. App'x 64, 68 n.7 (3d Cir. 2013) (citing cases). Plaintiff alleges that as a result of the 24-hour illumination and noise, he has suffered severe sleep deprivation, eye problems, ear pain, severe and constant headaches, and a

worsening of his mental health issues. (ECF No. 71 at 18.) Defendants have not moved to dismiss this claim. Taking all of Plaintiff's allegations as true and affording him every favorable inference, Plaintiff has stated an Eighth Amendment claim relating to conditions of confinement. This claim remains pending.

7. Procedural Due Process Violations Relating to Administrative Custody

At paragraphs 68 through 79, Plaintiff appears to allege a violation of his Fourteenth Amendment Procedural Due Process rights with regard to his placement in various forms of administrative custody. Specifically, Plaintiff alleges that none of the procedures outlined in DOC regulations were followed.

To assert a right to procedural due process, a plaintiff must have a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). "A prisoner facing the loss of a legally cognizable liberty interest following disciplinary proceedings has a due process right to certain procedural protections, including the opportunity to call witnesses and present documentary evidence." *Dunbar v. Barone*, 487 F. App'x 721, 724 (3d Cir. 2012) (addressing an inmate's claim that his procedural due process rights were violated when he was not permitted to call witnesses at his misconduct hearing) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566-67 (1974)). "But, this due process right is not triggered unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Dunbar*, 487 F. App'x at 724-25 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

"[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*). To determine

if a plaintiff's placement was atypical, the court considers: "1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement." *Shoats*, 213 F.3d at 144. Plaintiff alleges that he has been subjected to illegal confinement for nearly two years. (ECF No. 3 ¶ 76.) The United States Court of Appeals for the Third Circuit has previously held that two years may be atypical and implicate a protected liberty interest. *Deen-Mitchell v. Lappin*, 514 F. App'x 81, 85 (3d Cir. 2013). If Plaintiff does have a protected liberty interest, he is entitled to the procedures set out in the DOC's regulations. Plaintiff alleges he was denied those procedures. (ECF No. 3 ¶¶ 69-79.) Taking all of Plaintiff's allegations as true as it must on a motion to dismiss, and affording the pro se inmate every favorable inference, the Court will not sua sponte dismiss Plaintiff's procedural due process claim, and the claim remains pending.

IV.    CONCLUSION

For the reasons discussed above, the Motion to Dismiss filed by Dr. Hasper (ECF No. 49) will be granted in part and denied in part. The Motion will be granted as it relates to Plaintiff's claim for delay/denial of medical care, and denied as it relates to Plaintiff's claim for retaliation.

The Motion to Dismiss filed by Dawn Ducote, Dr. Eisenberg, Richard Ellers, Lisa Lamoreaux, Heather McKeel (ECF No. 42) will be granted.

The Motion to Dismiss filed by Dr. Cairns, Joseph H. Dupont, Jamie Ferdarko, Renee Foulds, I. Gustafson, Anthony Miorelli, Keri Moore, Derrick Oberlander, Michael Overmyer, Gary Prinkey, J. Sawtelle, Cheryl Scott, Joseph Silva, Dr. Bruce Simons, Kim Smith, Tracey Smith, Trevor Wingard (ECF No. 37) will be granted in part and denied in part. It will be granted as to the following claims: All official capacity claims and claims for declaratory and

injunctive relief; claims against Defendants Silva, Cairns, I. Gustafson, K. Smith, Fedarko, Prinkey and Dr. Simons, Overmyer, Moore; Foulds, Miorelli and Scott for lack of personal involvement relating to the grievance process; claims against T. Smith and Wingard relating to Plaintiff's religious diet accommodation claim; and the retaliation claim as it relates to the delay/denial of medical care against Defendants Prinkey, K. Smith, Ferdarko, Overmyer and Moore. It will be denied as to the following claims: The claim against Overmyer and Dupont with respect to their involvement in reviewing Plaintiff's appeals from an administrative custody placement; the cell illumination claim; the due process claim relating to Plaintiff's confinement in administrative custody; and the retaliation claims relating to the removal of Plaintiff's Z-code status and confinement in administrative custody.

The following claims remain pending: All claims against Defendants Oberlander and Sawtelle which were not included in the DOC Defendants' Motion to Dismiss; the retaliation claims relating to the removal of Plaintiff's Z code status against Defendants Dr. Hasper and Dr. Simons; the retaliation claims relating to Plaintiff's confinement in administrative custody against Defendants Overmyer, Dupont and Gustafson; procedural due process claims against Overmyer, Dupont, Oberlander, Sawtelle and Gustafson; claims against Overmyer and Dupont relating to their involvement in reviewing Plaintiff's appeals from Administrative Custody placement; and the cell illumination claim.

The following Defendants will be terminated as party defendants: Dawn Ducote, Dr. Eisenberg, Richard Ellers, Lisa Lamoreaux, Heather McKeel; Dr. Eisenberg; Kim Smith; Jamie Ferdarko; Gary Prinkey; Renee Foulds; Anthony Miorelli; Tracey Smith; Trevor Wingard; Cheryl Scott; Richard Ellers, Joseph Silva; Keri Moore; and Dr. Cairns.

An appropriate Order will follow.


Dated:  June 27, 2019

**BY THE COURT**



s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

cc:      Mustafa Ali
         JK6902
         SCI Retreat
         660 State Route 11
         Hunlock Creek, PA 18621-3136